## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR THE COLUMBIAN BANK &
TRUST COMPANY,

        Plaintiff,

vs.                                                                    No. CV 11-0708 JB/ACT

LOCKHAVEN ESTATES, LLC, VINCENT J. GARCIA,
MARIA P. GARCIA, LNV CORPORATION and
KURT LAMBERT,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the FDIC/Receiver's Motion for Default

Judgment and Summary Judgment, filed Mar. 26, 2012 (Doc. 32)("Summary Judgment

Motion"). The Court held a hearing on August 1, 2012. The Primary issues are: (i) whether

Plaintiff Federal Deposit Insurance Corporation, as Receiver for the Columbian Bank & Trust

Company, has established that it is entitled to summary judgment because the undisputed facts

establish that it is entitled to enforce the Note dated April 27, 2006 it holds executed by

Defendant Lockhaven Estates, LLC, and the Unconditional Guaranty dated April 27, 2006 it

holds executed by Defendants Vincent J. Garcia and Maria P. Garcia; (ii) whether the

Defendants are precluded from asserting certain defenses against the FDIC, because they have

not exhausted their administrative remedies; (iii) whether the Court lacks subject-matter

jurisdiction to grant Lockhaven Estates', V. Garcia's, and M. Garcia's requests for equitable

relief against the FDIC's enforcement of its claims; (iv) whether Lockhaven Estates and V.

Garcia have shown that there is a genuine issue of material fact that there is an agreement that

modified the terms of the Note that the FDIC holds.  The Court will grant in part and deny in part

the FDIC's Summary Judgment Motion.  The undisputed facts establish that the FDIC is entitled

to enforce the Note and the Unconditional Guaranty in full against Lockhaven Estates and V.

Garcia, and is entitled to foreclose on the properties securing the Mortgage.  The Financial

Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183

(codified as amended in scattered sections of 12 U.S.C.) ("FIRREA"), and the plain language of

the Loan Agreement, Note, Mortgage, and Unconditional Guaranty preclude all of the

Defendants' affirmative defenses.  Because the FDIC is entitled to proceed only *in rem* against

M. Garcia, however, the Court will deny the FDIC's request to have a deficiency judgment

entered in its favor should the foreclosure sale of the properties securing the mortgage be

insufficient to cover the judgment.

## FACTUAL BACKGROUND

The parties do not contest the facts.[1]  Lockhaven Estates entered into a Loan Agreement,

filed Aug. 11, 2011 (Doc. 1-1), with The Columbian Bank & Trust Company for the purpose of

---

[1]The parties do not dispute the facts set forth in the FDIC's Memorandum of Points and Authorities in Support of FDIC/Receiver's Motion for Default Judgment and Summary Judgment, filed Mar. 26, 2012 (Doc. 33)("Memorandum").  The local rules establish that, for purposes of summary judgment, "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically converted."  D.N.M.LR-Civ. 56.1(b).  The local rules also provide that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes a consent to grant the motion."  D.N.M.LR-Civ. 7.1(b).  The time prescribed by the local rules for serving a response in opposition to a motion is fourteen days.  See D.N.M.LR-Civ. 7.4(a).  The local rules, however, "may be waived by a Judge to avoid injustice."  D.N.M.LR-Civ. 1.7.  As of the date of this Memorandum Opinion and Order, the only Defendant that has submitted a response in opposition to the FDIC's Summary Judgment Motion is M. Garcia.  M. Garcia does not dispute the facts, but rather explains that she did not fully understand the implications of signing the guaranty.  See note 2, infra.  At the August 1, 2012 hearing on the Summary Judgment Motion, in response to the FDIC's pointing out that no responsive motion has been filed, and that the Defendants thus consent to granting the motion, V. Garcia responded that he did not know that he was required to file a response in opposition to avoid consent to the motion being granted.  See Transcript of Hearing at 13:8-10 (Garcia)(taken Aug. 1, 2012)("Tr.")(The Court's citations to the transcript of the hearing refer to

refinancing and developing certain real property in Curry County, New Mexico. The Loan Agreement sets out the terms and conditions of the loan. See Memorandum ¶ 1, at 2 (setting forth this fact); Complaint for Foreclosure  ¶ 9, at 2, filed Aug. 11, 2011 (Doc. 1)("Complaint") (setting forth this fact); Loan Agreement; Answer of Defendants Lockhaven Estates, LLC and Vincent J. Garcia to Complaint for Foreclosure ¶ 3, at 1, filed Oct. 12, 2011 (Doc. 13)("Lockhaven Estates/V. Garcia Answer")(admitting this fact); Affidavit of Gary Ellis in Support of FDIC's Motion for Default Judgment and Summary Judgment ¶ 2, at 1-2, filed Mar. 26, 2012 (Doc. 35)("Ellis Affidavit).  Lockhaven Estates executed the Note in the principal sum of $1,800,000.00 with interest accruing at the initial rate of 11.25% in favor of Columbian Bank. The Note was payable in full on April 27, 2008. See Memorandum ¶ 2, at 2 (setting forth this fact); Complaint ¶¶ 10, 11, at 2-3; Note, filed Aug. 11, 2011 (Doc. 1-2); Lockhaven Estates/V. Garcia Answer to Complaint ¶ 3, at 1 (admitting this fact); Ellis Affidavit, ¶ 3, at 2.  As security for payment of the Note, Lockhaven Estates executed a Mortgage dated April 27, 2006 in favor of Columbian Bank, covering the property situated in Curry County, New Mexico ("Property"), described as follows:

> A TRACT IN THE SOUTHWEST QUARTER (SW/4), SECTION 11, TOWNSHIP 2 NORTH (T2N), RANGE THIRTY-FIVE EAST (R35E), N.M.P.M., CITY OF CLOVIS, CURRY COUNTY, NEW MEXICO, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A POINT ON THE WEST LINE OF SECTION 11, T2N, R35E, BEING 645.08 FEET N00º06'12"W FROM THE SW CORNER OF SECTION 11; THENCE

---

the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers).  V. Garcia asserted that, if he had known that a response in opposition was required to object to the Court granting the Summary Judgment Motion, he would have filed one. See Tr. at 13:12-14 (Garcia).  The Court stated that, by appearing at the hearing and objecting to the Court's granting the Summary Judgment Motion, the Court will not find that V. Garcia consents to the Court granting the motion; however, the Court noted that, if any Defendants wanted to dispute the FDIC's asserted material facts, they would have to file a response in opposition specifically controverting those facts as required in local rule 56.1.  See Tr. at 24:15-26:17 (Court).  Because the Defendants, other than M. Garcia, have not, to date, filed a response in opposition controverting the FDIC's assertions of fact, they are undisputed.

N00º30'22"W 810.0 FEET; THENCE N89º46'30"E 777.30 FEET; THENCE S00º30'22"W, 810.0 FEET; THENCE S89º46'19"W 768.66 FEET TO THE POINT OF BEGINNING, NOW KNOWN AS LOTS ONE (1) THROUGH NINE (9) IN BLOCK FOUR (4), LOTS ONE (1) THROUGH EIGHTEEN (18) IN BLOCK FIVE (5), LOTS ONE (1) THROUGH EIGHTEEN (18) IN BLOCK SIX (6), LOTS ONE (1) THROUGH NINE (9) IN BLOCK SEVEN (7) AND LOTS ONE (1) THROUGH TWELVE (12) IN BLOCK EIGHT (8), LOCKHAVEN ESTATES UNIT NO. ONE (#1), TO THE CITY OF CLOVIS, CURRY COUNTY, NEW MEXICO, as shown by the official recorded plat thereof

AND

THE FOLLOWING LOTS IN THE PIERCE ADDITION, UNIT NO. TWO (#2), LOTS FIVE (5) THROUGH SEVENTEEN (17) IN BLOCK ONE (1); LOTS EIGHT (8) THROUGH THIRTEEN (13) IN BLOCK TWO (2); LOTS ONE (1) THROUGH TWENTY-SEVEN (27) IN BLOCK THREE (3); LOTS FIVE (5) THROUGH TEN (10) IN BLOCK FOUR (4); LOTS SIX (6) THROUGH TWELVE (12) IN BLOCK SIX (6); LOT TWO (2) IN BLOCK TEN (10); LOTS ONE (1) AND TWO (2) IN BLOCK ELEVEN (11); AND LOTS ONE (1) THROUGH FIVE (5) IN BLOCK TWELVE (12), TO THE CITY OF CLOVIS, CURRY COUNTY, NEW MEXICO, as shown by the official recorded plat thereof.

The Mortgage was recorded on April 27, 2006, as Document No. 600003210 at Book 458, Page 1559 of the Records of Curry County.  See Memorandum ¶ 3, at 2-3 (setting forth this fact); Complaint ¶ 12, at 3-4 (setting forth this fact); Mortgage at 1-2, filed Aug. 11, 2011 (Doc. 1-3) (noting the filing date and time on the top of each page); Lockhaven Estates/V. Garcia Answer ¶ 3, at 1 (admitting this fact); Ellis Affidavit ¶ 4, at 2-3.  The street addresses corresponding to the individual lots (the "Properties") within the Property are as follows:

| Subdivision Addition Name | Block No. | Lot No. | Address |
|---|---|---|---|
| Lockhaven Estates Unit 1 | 4 | 1 | 3909 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 2 | 3905 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 3 | 3901 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 4 | 3833 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 5 | 3829 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 6 | 3825 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 7 | 3821 Madison Road |
| Lockhaven Estates Unit 1 | 4 | 8 | 3817 Madison Road |

| | | | |
|---|---|---|---|
| Lockhaven Estates Unit 1 | 4 | 9 | 3813 Madison Road |
| Lockhaven Estates Unit 1 | 4 | Retention pond | 3805 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 1 | 3801 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 2 | 3805 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 3 | 3809 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 4 | 3813 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 5 | 3817 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 6 | 3821 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 7 | 3825 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 8 | 3829 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 5 | 9 | 3621 Weston |
| Lockhaven Estates Unit 1 | 5 | 10 | 3631 Weston |
| Lockhaven Estates Unit 1 | 5 | 11 | 3828 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 12 | 3824 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 13 | 3820 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 14 | 3816 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 15 | 3812 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 16 | 3808 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 17 | 3804 Madison Road |
| Lockhaven Estates Unit 1 | 5 | 18 | 3800 Madison Road |
| Lockhaven Estates Unit 1 | 6 | 1 | 3801 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 2 | 3805 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 3 | 3809 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 4 | 3813 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 5 | 3817 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 6 | 3821 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 7 | 3825 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 8 | 3829 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 9 | 3833 Buchanan Court |
| Lockhaven Estates Unit 1 | 6 | 10 | 3832 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 11 | 3828 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 12 | 3824 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 13 | 3820 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 14 | 3816 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 15 | 3812 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 16 | 3808 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 17 | 3804 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 6 | 18 | 3800 Lockhaven Drive |
| Lockhaven Estates Unit 1 | 7 | 1 | 3800 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 2 | 3804 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 3 | 3808 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 4 | 3812 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 5 | 3816 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 6 | 3820 Buchanan Court |

| Lockhaven Estates Unit 1 | 7 | 7 | 3824 Buchanan Court |
|---|---|---|---|
| Lockhaven Estates Unit 1 | 7 | 8 | 3828 Buchanan Court |
| Lockhaven Estates Unit 1 | 7 | 9 | 3832 Buchanan Court |
| Lockhaven Estates Unit 1 | 8 | 1 | 3520 Weston |
| Lockhaven Estates Unit 1 | 8 | 2 | 3524 Weston |
| Lockhaven Estates Unit 1 | 8 | 3 | 3528 Weston |
| Lockhaven Estates Unit 1 | 8 | 4 | 3600 Weston |
| Lockhaven Estates Unit 1 | 8 | 5 | 3604 Weston |
| Lockhaven Estates Unit 1 | 8 | 6 | 3608 Weston |
| Lockhaven Estates Unit 1 | 8 | 7 | 3612 Weston |
| Lockhaven Estates Unit 1 | 8 | 8 | 3616 Weston |
| Lockhaven Estates Unit 1 | 8 | 9 | 3620 Weston |
| Lockhaven Estates Unit 1 | 8 | 10 | 3624 Weston |
| Lockhaven Estates Unit 1 | 8 | 11 | 3628 Weston |
| Lockhaven Estates Unit 1 | 8 | 12 | 3632 Weston |
| Pierce Addition Unit 2 | 1 | 5 | 3220 Weston |
| Pierce Addition Unit 2 | 1 | 6 | 3224 Weston |
| Pierce Addition Unit 2 | 1 | 7 | 3228 Weston |
| Pierce Addition Unit 2 | 1 | 8 | 3232 Weston |
| Pierce Addition Unit 2 | 1 | 9 | 3236 Weston |
| Pierce Addition Unit 2 | 1 | 10 | 3240 Weston |
| Pierce Addition Unit 2 | 1 | 11 | 3244 Weston |
| Pierce Addition Unit 2 | 1 | 12 | 3300 Weston |
| Pierce Addition Unit 2 | 1 | 13 | 3304 Weston |
| Pierce Addition Unit 2 | 1 | 14 | 3308 Weston |
| Pierce Addition Unit 2 | 1 | 15 | 3312 Weston |
| Pierce Addition Unit 2 | 1 | 16 | 313 Uvaldy |
| Pierce Addition Unit 2 | 1 | 17 | 301 Uvaldy |
| Pierce Addition Unit 2 | 2 | 8 | 3412 Weston |
| Pierce Addition Unit 2 | 2 | 9 | 3416 Weston |
| Pierce Addition Unit 2 | 2 | 10 | 3420 Weston |
| Pierce Addition Unit 2 | 2 | 11 | 3424 Weston |
| Pierce Addition Unit 2 | 2 | 12 | 3428 Weston |
| Pierce Addition Unit 2 | 2 | 13 | 3432 Weston |
| Pierce Addition Unit 2 | 3 | 1 | 3301 Weston |
| Pierce Addition Unit 2 | 3 | 2 | 3305 Weston |
| Pierce Addition Unit 2 | 3 | 3 | 3309 Weston |
| Pierce Addition Unit 2 | 3 | 4 | 3313 Weston |
| Pierce Addition Unit 2 | 3 | 5 | 3401 Weston |
| Pierce Addition Unit 2 | 3 | 6 | 3405 Weston |
| Pierce Addition Unit 2 | 3 | 7 | 3409 Weston |
| Pierce Addition Unit 2 | 3 | 8 | 3413 Weston |
| Pierce Addition Unit 2 | 3 | 9 | 3417 Weston |
| Pierce Addition Unit 2 | 3 | 10 | 3421 Weston |
| Pierce Addition Unit 2 | 3 | 11 | 3425 Weston |

| Pierce Addition Unit 2 | 3 | 12 | 3429 Weston |
|---|---|---|---|
| Pierce Addition Unit 2 | 3 | 13 | 3433 Weston |
| Pierce Addition Unit 2 | 3 | 14 | 3501 Weston |
| Pierce Addition Unit 2 | 3 | 15 | 3505 Weston |
| Pierce Addition Unit 2 | 3 | 16 | 3509 Weston |
| Pierce Addition Unit 2 | 3 | 17 | 3436 Vinton |
| Pierce Addition Unit 2 | 3 | 18 | 3432 Vinton |
| Pierce Addition Unit 2 | 3 | 19 | 3428 Vinton |
| Pierce Addition Unit 2 | 3 | 20 | 3424 Vinton |
| Pierce Addition Unit 2 | 3 | 21 | 3420 Vinton |
| Pierce Addition Unit 2 | 3 | 22 | 3416 Vinton |
| Pierce Addition Unit 2 | 3 | 23 | 3412 Vinton |
| Pierce Addition Unit 2 | 3 | 24 | 3408 Vinton |
| Pierce Addition Unit 2 | 3 | 25 | 3404 Vinton |
| Pierce Addition Unit 2 | 3 | 26 | 3400 Vinton |
| Pierce Addition Unit 2 | 3 | 27 | 200 Uvaldy |
| Pierce Addition Unit 2 | 4 | 5 | 3221 Weston |
| Pierce Addition Unit 2 | 4 | 6 | 3225 Weston |
| Pierce Addition Unit 2 | 4 | 7 | 3229 Weston |
| Pierce Addition Unit 2 | 4 | 8 | 3233 Weston |
| Pierce Addition Unit 2 | 4 | 9 | 3237 Weston |
| Pierce Addition Unit 2 | 4 | 10 | 3241 Weston |
| Pierce Addition Unit 2 | 6 | 6 | 3405 Vinton |
| Pierce Addition Unit 2 | 6 | 7 | 3409 Vinton |
| Pierce Addition Unit 2 | 6 | 8 | 3413 Vinton |
| Pierce Addition Unit 2 | 6 | 9 | 3417 Vinton |
| Pierce Addition Unit 2 | 6 | 10 | 3421 Vinton |
| Pierce Addition Unit 2 | 6 | 11 | 3425 Vinton |
| Pierce Addition Unit 2 | 6 | 12 | 3429 Vinton |
| Pierce Addition Unit 2 | 10 | 2 | 3501 Vinton |
| Pierce Addition Unit 2 | 11 | 1 | 301 Ventura |
| Pierce Addition Unit 2 | 11 | 2 | 3517 Weston |
| Pierce Addition Unit 2 | 12 | 1 | 3500 Weston |
| Pierce Addition Unit 2 | 12 | 2 | 3504 Weston |
| Pierce Addition Unit 2 | 12 | 3 | 3508 Weston |
| Pierce Addition Unit 2 | 12 | 4 | 3512 Weston |
| Pierce Addition Unit 2 | 12 | 5 | 3516 Weston |

Memorandum ¶ 4, at 3-6 (setting forth this fact and the addresses); Complaint, ¶ 13, at 4-7 (setting forth this fact); Lockhaven Estates/V. Garcia Answer ¶ 3 (admitting these addresses correspond to the individual lots within the Property); Ellis Affidavit ¶ 5, at 3-6.  As further security for payment of the Note, V. Garcia and M. Garcia executed an Unconditional Guaranty,

guaranteeing payment of the Note and all indebtedness owed by Lockhaven Estates.[2] See Memorandum ¶ 5, at 6-7 (setting forth this fact); Complaint ¶ 14, at 7; Unconditional Guaranty to Columbian Bank & Trust Company, filed Aug. 11, 2011 (Doc. 1-4)("Unconditional Guaranty"); Lockhaven Estates/V. Garcia Answer ¶ 3, at 1 (admitting this fact); Ellis Affidavit ¶ 6, at 6. V. Garcia is no longer married to M. Garcia. See Tr. at 15:5-17 (V. Garcia).

On August 22, 2008, the Office of the States Bank Commissioner's Division of Banking for the State of Kansas declared Columbian Bank insolvent after "a thorough investigation of [its] affairs and condition," and appointed the FDIC as receiver for Columbian Bank. Declaration of Insolvency and Tender of Receivership at 1, filed Mar. 26, 2012 (Doc. 35-1). The FDIC is thus the owner and holder of the Note and Mortgage, and all related loan and security documents. See Memorandum ¶ 6, at 7 (setting forth this fact) Ellis Affidavit ¶ 7, at 6;

---

[2]In response to the FDIC setting forth this fact, M. Garcia states

> that she was induced to sign the loan documents including the loan agreement and guaranty without understanding what obligations were being guaranteed and that she had no involvement in the subject development or loan transactions and executed the guarantee based on misrepresentations that as spouse of Vincent J. Garcia she was required to sign the documents . . . .

Response by Defendant Maria P. Garcia to Plaintiff's Motion for Summary Judgment at 1, filed Apr. 10, 2012 (Doc. 36)("M. Garcia's Response"). D.N.M.LR-Civ. 56.1(b) provides:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b). The local rules regarding summary judgment thus require the responding party to "specifically controvert[]" the movant's fact, or else the fact is deemed admitted. D.N.M.LR-Civ. 56.1(b). M. Garcia's Response does not specifically controvert that she and V. Garcia executed the Unconditional Guarantee, but rather raises a defense to the Court's enforcing the guarantee as to her. The Court, therefore, deems the fact undisputed.

Declaration of Insolvency and Tender of Receivership; Letter from the FDIC to J. Thomas Thull,

Bank Commissioner (dated August 22, 2008), filed Mar. 26, 2012 (Doc. 35-2)("Acceptance of

Appointment as Receiver").

The relevant portions of the Loan Agreement, Note, Mortgage, and Unconditional

Guaranty (collectively the "Loan Documents") provide in pertinent part:

## RECITALS

  A.  Borrower has applied to Lender for a loan in the principal amount of ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100 U.S. DOLLARS ($1,800,000.00) (the "**Loan**") . . . .

  B.  The Loan will be secured by a first priority lien on the Property . . .

  C.  The Loan will be guaranteed by Vincent J. Garcia and Maria P. Garcia, two of Borrower's members.

## AGREEMENT

. . . .

  2.4  "Default" means any event which, with the giving of notice or the passage of time, or either or both, as provided in the Loan Documents, would become an Event of Default or constitute a default or breach thereunder.

. . . .

  3.  **<u>The Loan</u>**.

  3.1 <u>Agreement to Lend</u>.  Subject to the terms and conditions set forth in this Loan Agreement, Lender agrees to make the Loan to or for the benefit of the Borrower, evidenced by the Note, in the amount of One Million Eight Hundred Thousand and No/100 Dollars ($1,800,000.00) to acquire and develop the Property or any other lawful purpose as approved by Lender.  The Loan Shall be made in multiple advances as the Borrower Completes the development of the Property.  The initial advance shall be an amount equal to $_____, and the balance of the Loan shall be advanced as interest is paid . . . or portions of the work on the Property is completed and inspected in accordance with procedures developed by the Lender.

  3.2. <u>Maturity Date and Extensions</u>. The Maturity Date is April 27, 2008. Unless payment is required to be made earlier under the terms of the Loan

or Loan Agreement following the occurrence of an Event of Default, Borrower shall pay the entire principal amount outstanding under the Loan, together with all accrued and unpaid interest and other agreed charges, in full on the Maturity Date.

. . . .

4. **Representations and Warranties.**

. . . .

4.5. All taxes and assessments levied against or affecting the Property which are due and owing have been paid current prior to becoming delinquent.

. . . .

6. **Covenants of Borrower.** At all times while any portion of the Loan is outstanding, Borrower covenants and agrees as follows:

. . . .

6.7. <u>Taxes</u>. To pay prior to delinquency, all taxes, assessments, levies and charges, excises, permit fees and charges imposed by any Governmental Authority or utility company which, if unpaid, may become a lien on all or part of the Property.

. . . .

7. **Events of Default and Remedies.**

7.1. <u>Default</u>. Each of the following shall be an Event of Default:

7.1.1. if Borrower fails to make any payment of interest due under the Note within ten (10) days after such payment is due;

7.1.2. if Borrower fails to pay any sum required under any of the Loan Documents (other than principal and interest) within ten (10) days after such payment is due;

. . .

7.1.6. if Borrower defaults in the payment of any sum due Lender or fails to perform any obligation to Lender under any other loan from Lender to Borrower and fails to cure that default within the applicable grace period, if any;

. . .

7.1.9. if any event occurs that it is a breach, default or Event of Default under any of the other Loan Documents . . .

. . . .

7.2.    Remedies. On the occurrence of an Event of Default and after the expiration of any applicable grace period, Lender may exercise any or all of the following rights and remedies as Lender, in its sole discretion, may deem necessary or appropriate:

7.2.1. declare the Note and all other obligations owed Lender by Borrower immediately due and payable without notice;

7.2.2. exercise any remedies available under any of the Loan Documents.

. . . .

8.4.    Modification; Waiver; Consent. Any modification, or waiver of any provision of this Loan Agreement, or any consent to any departure by Borrower therefrom, shall not be effective unless in writing and signed by Lender. . . .

. . . .

8.13.    Entire Agreement. This Loan Agreement and the other Loan Documents contain the entire agreement between Lender and Borrower with respect to the subject matter hereof and supersede and cancel any prior understandings and agreements between the Lender and Borrower with respect to the subject matter hereof.

8.14.    Integration. This Loan Agreement embodies the entire agreement of the parties with regard to the subject matter hereof. There are no representations, promises, warranties, understandings or agreements expressed or implied, oral or otherwise, in relation thereto, except those expressly referred to or set forth herein. . . .

Loan Agreement at 1-14.  The Note provides in pertinent part:

**PROMISE TO PAY.** FOR VALUE RECEIVED, LOCKHAVEN ESTATES, LLC . . . promises to pay to the order of THE COLUMBIAN BANK & TRUST COMPANY . . . the principal amount of ONE MILLION EIGHT HUNDRED THOUSAND AND NO/100 DOLLARS ($1,800,000.00) . . . .

The Maturity Date is April 27, 2008.

. . . .

> **PAYMENT.** . . . If not sooner paid, as provided above or otherwise, all remaining principal outstanding, all accrued and unpaid interest, and all other amounts payable by Borrower to Lender under the Loan Documents shall be paid in full by the Maturity Date.

. . . .

> **DEFAULT**. Borrower will be in default hereunder if any of the following happens: (a) Borrower fails to make any payment under this Note within ten (10) days after such payment is due, (b) Borrower fails to keep or promptly perform at the time and strictly in the manner provided in the Note, any covenant, promise or undertaking (other than for payment) made by Borrower in this Note and such failure continues for thirty (30) days following Borrower's receipt of written notice from Lender of such failure, or (c) an Event of Default (as defined in the Loan Agreement) has occurred.

> **LENDER'S RIGHTS**. Upon a default hereunder, Lender may, at its option, declare the entire unpaid principal balance of this Note, all accrued unpaid interest thereon and any other obligations arising in connection with the Loan immediately due and payable, without notice or demand, and Borrower will pay that amount. . . .

Note at 1-2.  The Mortgage provides in pertinent part:

> Lockhaven Estates, LLC . . . for consideration paid, grants to The Columbian Bank & Trust Company . . . the following-described real estate in Curry County, New Mexico (the "Property"), with mortgage covenants . . .

. . . .

> This Mortgage is made upon the statutory mortgage condition for the breach of which its [sic] is subject to foreclosure as provided by law.

Mortgage at 1, 6.  The Unconditional Guaranty provides in pertinent part:

> For valuable consideration, the undersigned, Vincent J. Garcia and Maria P. Garcia, husband and wife (hereinafter called "**Guarantor**"), absolutely, irrevocably and unconditionally, jointly and severally, guarantee and promise to pay to The Columbian Bank & Trust Company (hereinafter called "**Lender**"), on demand, in lawful money of the United States, any and all indebtedness owed by Lockhaven Estates, LLC . . . . The indebtedness includes any and all of Borrower's indebtedness to Lender, including but not limited to the indebtedness

in connection with the Promissory Note from Borrower to Lender, dated April 27, 2006, in the principal amount of $1,800,000.00 (the **Note**").

 . . . .

    (2)    Upon such terms and at such times as it deems best and without notice to guarantor, Lender may (a) alter, compromise, modify, accelerate, extend or change the time or manner for the payment of the indebtedness . . . and (e) resort to Guarantor for payment of all or any portion of the indebtedness, whether or not Lender shall have resorted to any property securing the indebtedness or shall have proceeded against Borrower or any party primarily or secondarily liable for the indebtedness. . . .

. . . .

    (8)    Guarantor hereby warrants and represents unto Lender that:

. . .

    (d)    This guaranty is the valid and binding legal obligations of Guarantor, and is enforceable in accordance with its terms, subject to bankruptcy, insolvency . . . or other similar laws relating to the rights of creditors generally and general principles of equity. . . .

Unconditional Guaranty at 1, 3.

The Note has matured and all unpaid principal and interest is now due and payable. <u>See</u> Memorandum ¶ 7, at 7 (setting forth this fact); Complaint ¶ 16, at 7 (setting forth this fact); Ellis Affidavit ¶ 8, at 6.  All necessary demand for the FDIC's recovery has been performed or has occurred.[3] <u>See</u> Memorandum ¶ 8, at 7 (setting forth this fact); Ellis Affidavit ¶ 9, at 6; Letter

---

[3]M. Garcia, in response to this asserted fact, states that "she never was served with any demand or default notices regarding the subject loans." M. Garcia's Response at 2.  To dispute a fact, the non-movant "must refer with particularity to those portions of the record upon which the non-movant relies . . . . All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."  D.N.M.LR- Civ. 56.1(b).  "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  <u>United States v. Simons</u>, 129 F.3d 1386, 1388 (10th Cir. 1997)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248).   In support of this fact, M. Garcia points to her verified Answer, wherein she asserted that the FDIC's "claims are barred since Plaintiff never served any demand or default notices upon Defendant Maria Garcia."

Answer to Plaintiffs [sic] Complaint by Defendant Maria P. Garcia ¶ 5, at 2, filed Oct. 12, 2011 (Doc. 14)("M. Garcia Answer").   Whether M. Garcia received notice of default or demand, however, is not a material issue. The Unconditional Guaranty that M. Garcia signed authorizes the lender to accelerate the underlying indebtedness and hold Garcia liable for payment as guarantor "without notice to Guarantor . . . ." Unconditional Guaranty ¶ 2, at 1.  Accordingly, the Loan Documents did not require the FDIC to provide written notice before resorting to her for payment of Lockhaven Estates' underlying obligation.  Whether Columbian Bank or the FDIC provided her demand or notice of default, therefore, is not an essential element of the FDIC's claim against her and is "irrelevant or unnecessary [and] will not be counted" to dispute the FDIC's fact that it has completed all necessary demand for recovery.  United States v. Simons, 129 F.3d at1388.   Accord FDIC v. Hopping Brook Trust, 117 F.3d 639, 640-41 (1st Cir. 1997)(holding that "demand or notice is not necessary" for a party that was guarantor of a loan where the "waiver[] [was] included in the agreement . . ."); N.Y. Sec. & Trust Co. v. Lombard Inv. Co. of Kansas, 73 F. 537, 551 (W.D. Mo. 1896)(holding that, notice is not required for a party that guarantees the payment of an underlying promissory note)("Proof of demand and notice of nonpayment were not necessary. . . . As regards the maker of the note, and to render him liable, no demand is necessary. A demand of payment is necessary only to fix an indorser or surety, whose undertaking is conditional. . . .").   See also Global Indus., Inc. v. Harris, 376 F. Supp. 1379, 1382 (N.D. Ga. 1974)(holding that notice was not required where defendants had expressly waived notice in the loan documents, and holding that waiver was not against public policy, because "it is incumbent upon the debtor to initiate injunctive proceedings should he feel that foreclosure has been undertaken erroneously or in bad faith")

Although M. Garcia raises as a defense in her M. Garcia's Response that she did not understand her obligations in signing the Unconditional Guaranty, and that she relied on misrepresentations at signing, she does not refer the Court to evidence that would allow a factfinder, or the Court, to conclude that any misrepresentations were made.  As a preliminary matter, M. Garcia's Response cannot be relied upon to dispute facts that the FDIC sets forth. The United States Court of Appeals for the Tenth Circuit has noted, a non-moving party cannot, as a matter of law, rely on statements in its unverified pleadings or its briefs to dispute a fact set forth by the moving party:

> Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Thus, when a movant claims that there is no genuine issue for trial because a material fact is undisputed, the nonmovant must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein.

Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992)(internal quotations, citations, and alterations omitted)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  She argues that, because she was induced to sign the Unconditional Guaranty, the Court should rescind the Unconditional Guaranty as to her.   See M. Garcia's Response at ¶ 2, at 1. Similarly, in M. Garcia Answer, she states that, "she was induced to sign the documents."  M. Garcia Answer ¶ 2, at 2.  However, M. Garcia does not set forth any "specific facts" regarding

from the FDIC to Lockhaven  Estates (dated December 16, 2008), filed Mar. 26, 2012 (Doc. 35-3);  Letter from the FDIC to V. Garcia (dated December 16, 2008), filed Mar. 26, 2012 (Doc. 35-4); Letter from the FDIC to M. Garcia (dated December 16, 2008), filed Mar. 26, 2012 (Doc. 35-5).

The FDIC has employed attorneys to collect the amounts due on the Note, and to institute and prosecute this foreclosure suit, and has incurred an obligation for attorney's fees that Lockhaven Estates must, in accordance with the terms of the Note and Mortgage, pay. See Memorandum ¶ 9, at 7 (setting forth this fact); Note at 6; Mortgage ¶ 1.4, at 2; Ellis Affidavit ¶ 10, at 6.  The Mortgage provides that if it is foreclosed the redemption period shall be one month in lieu of nine months. See Memorandum ¶ 10, at 7 (setting forth this fact); Complaint ¶ 21, at 8 (setting forth this fact); Lockhaven Estates/V. Garcia Answer ¶ 3, at 1 (admitting this fact); Mortgage at 6; Ellis Affidavit ¶ 11, at 7.  As of August 5, 2011, the amounts due and owing on the Note are the principal amount of $1,800,000.00, plus outstanding interest due in the amount of $672,197.50, plus default rate adjustment of $403,312.50, and accruing thereafter at the rate of $900.00 per day, plus late charges of $123,356.25, plus title report fee of $537.81, plus other

---

any misrepresentation made at closing in either her Response or her Answer.   Both are conclusory regarding any such misrepresentations.   Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d at 1024.  Moreover, her Answer does not allege, nor does her M. Garcia's Response assert that, it was Columbian Bank that made the misrepresentation, only that there was a misrepresentation.   Such a conclusory allegation, without facts sufficient for a factfinder to conclude that Columbian Bank made a misrepresentation at closing, is insufficient to establish that there is a dispute whether Columbian Bank made a misrepresentation.   See Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.")(emphasis added).  Because M. Garcia fails to set forth specific facts in her verified M. Garcia Answer, and because her M. Garcia's Response cannot be relied upon to dispute a fact for summary judgment purposes, there is no competent evidence establishing a dispute as to the FDIC's proposed fact that all necessary demand for recovery has been performed. The Court, therefore, deems this fact -- that all necessary demand for the FDIC's recovery has been performed or has occurred -- undisputed.

necessary costs, plus attorney's fees and costs incurred in connection with this foreclosure action.
See Memorandum ¶ 7, at 7 (setting forth this fact); Ellis Affidavit ¶ 12, at 7.  The City of Clovis,
New Mexico, has assessed those portions of the Property located at 3632 Weston, 3833 Madison
Road, and 3909 Madison Road for non-payment by Lockhaven Estates of garbage and sewer
charges, and has given notice that it intends to foreclose its lien on those properties as a result.
See Memorandum ¶ 12, at 8 (setting forth this fact); Ellis Affidavit ¶ 14, at 7; 2nd Notice of
Foreclosure to Lockhaven Estates LLC, filed Mar. 26, 2012 (Doc. 35-6). The FDIC's reasonable
attorney's fees and costs incurred in this action are $19,264.88, plus $1,508.65 in court costs. See
Memorandum ¶ 15, at 8 (setting forth this fact); Attorney's Fees Affidavit in Support of FDIC's
Motion for Default Judgment and Summary Judgment at ¶¶ 5-7, 2-3, filed Mar. 26, 2012 (Doc.
34). The FDIC's Mortgage lien on the Properties was recorded before and/or is superior to the
interests and liens of the Defendants in said Properties, including Defendant LNV Corporation,
who may hold a Mortgage by virtue of an Assignment of Mortgage from the FDIC, recorded on
May 20, 2009. See Memorandum ¶ 14, at 8 (setting forth this fact); Complaint ¶¶ 22, 23, 24
(setting forth this fact); Mortgage at 1-7 (noting that it was recorded on April 27, 2006, at 3:25
pm, at the top of each page); LNV Corporation's Answer to Complaint for Foreclosure ¶ 4, at 4,
filed Sept. 6, 2011 (Doc. 5)(stating that it was assigned a mortgage dated May 18, 2006).

## PROCEDURAL BACKGROUND

On August 11, 2011, the FDIC filed its Complaint for Foreclosure against Lockhaven
Estates, V. Garcia, M. Garcia, as well as against LNV Corp. and Defendant Kurt Lambert.  See
Doc. 1 ("Complaint").  The FDIC filed this foreclosure action seeking multiple forms of relief,
including: (i) judgment against Lockhaven Estates, V. Garcia, and M. Garcia, for the principal
amount of the of $1,800,000.00, plus outstanding interest due on the Note in the amount of

$672,197.50 through August 5, 2011, plus default interest in the amount of $403,312.50 through August 5, 2011, and accruing thereafter at the rate of $900.00 per day, plus late charges of $123,356.25, plus title report fee of $537.81, plus other necessary costs, plus attorney's fees and costs incurred in connection with this foreclosure action; (ii) that the FDIC be declared to have a first, prior, and paramount lien in and to the Property as against any and all right, title and interest of the Defendants and any party who may intervene or be joined as a Defendant; and (iii) that the lien of the Mortgage be foreclosed and the Properties securing the same be sold according to the law and practice of this Court; that the proceeds from the sale be applied first to the costs of sale; second, to the monies advanced by the FDIC to preserve and protect its interest; third, to the FDIC's Judgment as set forth above; fourth, to any junior liens recognized by the Court and prioritized according to law; and the balance, if any, as determined by the Court. See Complaint ¶¶ A, B, C, at 9. All of the Defendants filed an answer to the Complaint, denying one or more of the FDIC's allegations, except for Lambert. See LNV Corporation's Answer to Complaint; Lockhaven Estates/V. Garcia Answer; M. Garcia Answer. M. Garcia's Answer is verified, while Lockhaven Estates' and V. Garcia's Answer is not. See M. Garcia Answer at 4, compare Lockhaven Estates/V. Garcia Answer at 5. On December 13, 2011, the FDIC moved for default judgment against Lambert, as he had not filed an answer to the Complaint. See FDIC/Receiver's Motion for Default Judgment Against Kurt Lambert. See (Doc.17). On December 14, 2011, the Clerk of the Court entered the Default of Lambert. See Clerk's Entry of Default, filed Dec. 14, 2011 (Doc. 20).

The FDIC now moves for default judgment and/or summary judgment, pursuant to rules 55 and 56 of the Federal Rules of Civil Procedure, against the Defendants. See Motion at 1. The FDIC filed concurrently with its motion its Memorandum setting forth the material facts and

evidence that support its motion for entry of judgment in its favor. Specifically, the FDIC prays for a default judgment and summary judgment as follows: (i) judgment against Lockhaven Estates, V. Garcia, and M. Garcia in the principal amount of $1,800,000.00, plus outstanding interest due in the amount of $672,197.50 as of August 5, 2011, plus default rate adjustment of $403,312.50, and accruing thereafter at the rate of $900.00, plus late charges of $123,356.25, plus title report fees of $537.81, plus attorney's fees and costs incurred in connection with the foreclosure action in the amount of $19,264.88, plus court costs of $1,508.65, plus other necessary costs; (ii) judgment declaring the FDIC to have a first, prior, and paramount lien as against all Defendants in and to the property situated in Curry County made the subject of this foreclosure action; (iii) that the lien of the FDIC's mortgage on the properties be foreclosed and that the properties securing same be sold according to the law and the Court's practice, that the proceeds from the sale be applied to the payment of the amounts due to the FDIC, with the FDIC having judgment for any deficiency in the proceeds of sale compared to the amount due the FDIC, and that any proceeds remaining be held pending further order from the Court; (iv) that Wayne Chew or his designee be appointed Special Master to advertise and sell the Properties at public auction to the highest bidder for cash as provided by law, and that the FDIC be allowed to bid its judgment as cash; (v) that such foreclosure sale shall be subject to a one-month right of redemption; (vi) that a Writ of Assistance be issued at the request of the FDIC or any purchaser at the foreclosure sale if Defendants or those claiming by, through, or under them refuse to vacate the Properties; and (vii) for all other relief to which the FDIC is entitled. See Motion at 1-2.

The FDIC asserts that "[t]here are no disputed material facts as to FDIC/Receiver's entitlement to recovery under said promissory note and FDIC/Receiver's entitlement to recovery

under said promissory note and FDIC/Receiver's entitlement to the same." Memorandum at 1. The FDIC contends that summary judgment is also appropriate as to LNV Corp.'s junior interest in the subject property, and that default judgment pursuant to rule 55 is appropriate as to defaulting Lambert. See Memorandum at 1-2. The FDIC asserts that actions such as this one to collect on promissory notes "are among the most suitable classes of cases for summary judgment." Memorandum at 8 (citing Fed. Sav. and Loan Ins. Corp. v. Wilson, 722 F. Supp. 306, 309 (N.D. Tex. 1989)). The FDIC contends: "To establish a prima facie case for summary judgment in such a case, the plaintiff must establish that the obligor executed and delivered the note, the plaintiff is the holder of the note, the note is due and payable, and the obligor failed to pay the amount due." Memorandum at 8-9 (citing Fed. Sav. and Loan Ins. Corp. v. Wilson, 722 F. Supp. at 309; N.M.S.A. 1978, § 55-3-308). The FDIC argues that "governing federal law renders immaterial any facts proffered by Defendants in support of their defenses which, as a matter of law, cannot be asserted against the FDIC as Receiver for a failed financial institution." Memorandum at 9. The FDIC asserts that these defenses fail, because: (i) the terms of the loan documents do not provide for the obligations -- i.e., failure to provide default notice, unclean hands as the FDIC is not a holder in due course -- that the Defendants assert as defenses to foreclosure; (ii) any defenses that are counterclaims against Columbian Bank "are required under 12 U.S.C. § 1821(d)(13)(D) and the doctrine of administrative exhaustion to be submitted as counterclaims against the bank receivership"; (iii) under 12 U.S.C. § 1821(j), equitable defenses cannot restrict the Receiver's powers; and (iv) some of the Defendants' defenses constitute "the assertion of side agreements," of which 12 U.S.C. § 1823(e) bars enforcement. Memorandum at 11.

The FDIC argues that the Defendants' defenses -- that Columbian Bank breached the Loan Agreement by failing to timely and fully fund the loan, that Columbian Bank agreed to modify the loan, and that Columbian Bank agreed not to foreclose -- fail, because the Loan Documents contradict these assertions.  See Memorandum at 11.  The FDIC asserts that the principal sum stated in the Note, the principal amount loaned under the Note, has been fully advanced and funded, that no agreement to modify the loan documents exists, and that the Loan Agreement's merger clause bars any agreements not on the face of the Loan Documents.  See Memorandum at 15.  The FDIC contends that the Loan Agreement provides that, if the loan is not timely paid, or if any other event constituting default occurs, the lender may accelerate the Note and declare it immediately due and payable without notice.  See Memorandum at 12.  To the extent that notice of default was "arguably required," the FDIC asserts that "notice of default and an opportunity to cure was given to the borrower and guarantors prior to this suit being filed."  Memorandum at 12 (citing Ellis Affidavit ¶ 9, at 6).

The FDIC argues that summary judgment is appropriate as to the Defendants' assertions that Columbian Bank breached the Loan Agreement and that they were damaged as a result, because these claims constitute an improper claim against a bank receivership for which the Defendants have not exhausted their administrative remedies.  See Memorandum at 16.  The FDIC notes that Congress, in enacting FIRREA, provided:

> [N]o court shall have jurisdiction over: (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed Receiver . . . or (ii) any claim relating to any claim or omission of such institution or the Corporation as Receiver.

Memorandum at 17 (12 U.S.C. § 1821(d)(13)(D)).  The FDIC asserts that, because Lockhaven Estates and V. Garcia have not submitted claims to the FDIC for Columbian Bank's alleged

breach of the Loan Agreement, the Court lacks subject matter jurisdiction over such claims.  See Memorandum at 17 (citing Ellis Affidavit ¶ 13, at 7).  The FDIC contends that "[t]he appropriate remedy for failure to comply with the administrative claims process is dismissal of judicial claims by the court."  Memorandum at 17 (citing Resolution Trust Corp. v. Mustang Partners, 946 F.2d 103, 106 (10th Cir. 1991)).

The FDIC argues that the Defendants' defense that the FDIC is "equitably estopped" from foreclosing on the loan is barred by 12 U.S.C. § 1821(j) of FIRREA, which deprives courts of jurisdiction to grant any form of equitable relief against the FDIC in its role as receiver. Memorandum at 18 (quoting 12 U.S.C. § 1821(j)).  The FDIC asserts that, because the Loan Documents for this loan and federal law prohibit enforcement of an unwritten agreement to extend or renew credit, the Defendants' assertion that the FDIC cannot foreclose on the loan, because there was an unwritten agreement in which Columbian Bank obligated itself to extend the term of the Note, to forebear from seeking foreclosure, or to release any defendant from liability, fails as the Defendants have no written proof of such an agreement.  See Memorandum at 19.  The FDIC contends that 12 U.S.C. § 1823(e)

> prohibits the assertion of any agreement which tends to diminish or defeat the interests of the FDIC in any asset acquired by it unless such agreement is in writing, executed by the institution and the person claiming an adverse interest thereunder, was approved by the institution's board as reflected in its minutes, and has been continuously held as an official record of said institution.

Memorandum at 19.  The FDIC asserts that "Section 1823(e) operates to bar both defenses and affirmative claims for relief . . . . [and that] [t]here is no equitable exception to the doctrine." Memorandum at 20 (citing Torke v. Fed. Deposit Ins. Corp., 761 F. Supp. 754, 756 (D. Colo. 1991); Amstrong v. Resolution Trust Co., 599 N.E.2d 1209, 1219 (Ill. Ct. App. 1992), aff'd, 623 N.E.2d 291 (1993)).  In response to Lockhaven Estates' and V. Garcia's contention that the

FDIC is not a holder in due course, or a legal holder or owner of the Note and the Mortgage, the FDIC points to 12 U.S.C. § 1821(d)(2)(A)(i), which provides that the FDIC as receiver "shall, . . . by operation of law, succeed to all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(i).  The FDIC argues that, because the alleged side agreements that underlie the Defendants' contention that Columbian Bank agreed to modify the Loan Agreement and other Loan Documents are not in writing and the Columbian Bank Board of Directors did not approve alleged agreement, they fail to meet the requirements set forth in 12 U.S.C. § 1823(e) and are thus unenforceable against the FDIC.  See Memorandum at 21.  The FDIC asserts that, to avoid summary judgment on any of these alleged modifications to the Loan Agreement or other Loan Documents, the burden is on the Defendants to produce the document evidencing the alleged agreement.  See Memorandum at 22 (citing Fed. Sav. and Loan Ins. Corp. v. Gemini Mgt., 921 F.2d 241, 243 (9th Cir. 1990)).

In response to Lockhaven Estates' and V. Garcia's defense that Columbian Bank did not timely and fully fund the loan, the FDIC argues that "Courts construing claims and defenses based on such irregular alleged agreements to fund or extend by a failed financial institution uniformly enter and uphold summary judgment in favor of the bank receiver as against such claims or defenses." Memorandum at 23-24 (citing Resolution Trust Corp. v. Daddona, 9 F.3d 312, 317 (3d Cir. 1993)(affirming the grant of summary judgment in favor of the plaintiff where bank letters referencing "initial" advances and "interim" funding were found insufficient to infer an obligation to make future loan advances for purposes of §1823(e)); Fed. Sav. and Loan Ins. Corp. v. Two Rivers Assocs., Inc., 880 F.2d 1267 (11th Cir. 1989)(affirming the district court's grant of summary judgment in favor of the plaintiff because, although the loan documents provided that the borrowers' agreement was "expressly conditioned on [the bank's] agreement to

provide [] further funding . . . [,]" the loan documents did not evidence the bank's agreement to provide the funding); Mainland Sav. Ass'n v. Riverfront Assocs., Ltd., 872 F.2d 955, 956 (10th Cir. 1989)(affirming summary judgment for the plaintiff, because the doctrine underlying 12 U.S.C. § 2183(e) barred assertion of the alleged oral agreement of the bank to fund a second loan)).  The FDIC concludes by asserting:

> Since the representations or agreements alleged by Defendants tend to "diminish or defeat the interests" in the acquired asset, all such defenses are invalid as against FDIC/Receiver, as contravening §1823(e). FDIC/Receiver is therefore entitled to summary judgment as a matter of law on the underlying obligation of Defendants as evidenced by the loan documents.

Memorandum at 24.

On April 10, 2012, M. Garcia filed M. Garcia's Response, asserting: "Plaintiff's contention that since the terms of the Loan Agreement, Note and Mortgage did not provide for the obligations Defendant seeks to impose on the FIDC receiver that her Affirmative Defenses should not stand is incorrect."  M. Garcia's Response at 2.  M. Garcia contends that "[s]he is simply claiming that she executed the Guarantee based upon misrepresentations made at closing . . . . [and] that she should not be held liable as a Guarantor for any deficiency judgment."  M. Garcia's Response at 2.  M. Garcia states:

> Plaintiff's Motion for Summary Judgment should be denied to the extent it requests judgment against Maria P. Garcia solely on the basis of the Guarantee executed by her. She has no knowledge as to whether or not it is appropriate for the Court to grant Summary Judgment on the Mortgage and Note and as to whether or not Plaintiff should be granted a Decree of Foreclosure.

M. Garcia's Response at 3.

On April 24, 2012, the FDIC filed its FDIC/Receiver's Reply to Defendant Maria P. Garcia's Response to Plaintiff's Motion for Summary Judgment.  See Doc. 38 ("Reply").  The FDIC asserts that M. Garcia's Response "demonstrates that summary judgment is appropriate to

her . . . . [because] she presents no competent evidence of any material facts precluding summary judgment against her on her guaranty of the underlying obligation made the subject of this foreclosure action."  Reply at 1.  The FDIC points out that M. Garcia does not dispute any of the facts that it asserted in its Memorandum, except as to paragraph five, regarding the circumstances of her execution of the Unconditional Guaranty, and paragraph eight, regarding service of notice of default.  See Reply at 1.  The FDIC asserts: "Other than these two defenses, Maria Garcia does not attempt to support any other defense to the FDIC's case against her . . . . includ[ing] her assertion in her Answer of the homestead exemption, which is inapplicable to consensual mortgage liens."  Reply at 2 (citing N.M.S.A. 1978, § 42-10-11; In re Yparrea, 16 B.R. 33, 34 n.1 (Bankr. D.N.M. 1981)).  The FDIC argues:

> [T]he principal defense she relies on -- that she allegedly did not understand the loan documents and executed them based on the misrepresentation that as spouse of Vincent J. Garcia she was required to sign the loan documents -- is exactly the type of defense barred by 12 U.S.C. §§ 1821(j) and 1823(E) of FIRREA.

Reply at 2.  The FDIC points out that she asserts this defense in her answer as an equitable defense and that 12 U.S.C. § 1821(j) bars such defenses in actions where the FDIC is acting as a receiver.  See Reply at 2 (quoting M. Garcia Answer).  The FDIC contends that M. Garcia's "attempt to avoid liability under the Unconditional Guaranty because of her alleged misunderstanding of the documents or alleged misrepresentation made at closing is exactly the type of unwritten condition that is absolutely prohibited from being asserted against the FDIC under § 1823(e)."  Reply at 2-3 (citing Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 4 F.3d 1490, 1497-1502 (9th Cir. 1993); Fed. Sav. & Loan Ins. Corp. v. Murray, 853 F.2d 1251, 1255 (5th Cir. 1988)).

The FDIC asserts that, regardless whether FIRREA bars M. Garcia's defenses, she fails to dispute its asserted material facts as she refers the Court to her M. Garcia's Answer as sole

support for her asserted defenses, which it asserts, she cannot, as a matter of law, rely upon at the summary judgment stage.  See Reply at 3 (citing Fed. R. Civ. P. 56(c)(4)).  The FDIC concedes that a verified pleading, when it satisfies the standards for affidavits set out in rule 56(c)(4), may be treated as an affidavit for purposes of supporting or opposing a summary judgment motion. See Reply at 3-4.  It contends, however, that M. Garcia's Answer does not meet satisfy the standards, because it is not based on personal knowledge, as it "is merely made to the 'best of her knowledge, information and belief.'"  Reply at 3.  It also contends that it fails to satisfy the standards for an affidavit, because it does not set out facts that would be admissible in evidence at trial.  See Reply at 4.  In response to M. Garcia's argument that she should not be liable because she was not provided notice of default, the FDIC asserts that, in addition to M. Garcia's failure to support her argument with competent evidence, the fact is not material, because the loan documents expressly provided that notice was not required in advance of foreclosure.  See Reply at 4-5.  It states that "[w]hether Columbian Bank or FDIC/Receiver gave Maria Garcia a default notice is not an essential element of FDIC/Receiver's claim against her."  Reply at 5. The FDIC asserts that summary judgment should thus be entered as requested against M. Garcia. See Reply at 5.

On July 16, 2012, M. Garcia filed notice of her Chapter 7 bankruptcy filing.  See Notice of Filing of Bankruptcy (Doc. 55).  Pursuant to the Court's request for the Parties' position on the breadth and scope of the Bankruptcy Court's automatic stay, all parties agreed that M. Garcia's bankruptcy filing caused the proceeding to be stayed as to her, but not as to any of the other Defendants.  See Facsimile Transmission from William C. Salmon to the Court, dated July 30, 2012, filed July 30,2012 (Doc. 58)("I represent Maria P. Garcia and I do not believe the Bankruptcy Stay applies to other Defendants and only applies to the debtor and I confirmed this

with her bankruptcy attorney Steve Sessions."); Letter from Steven D. Ingram to the Court, dated July 30, 2012, filed July 30, 2012 (Doc. 59)(same position); Letter from Vincent J. Garcia to the Court, dated July 31, 2012, filed July 31, 2012 (Doc. 60)(same position).

At the hearing, the Court noted that everyone was in agreement that, because there was a stay in the proceeding as to M. Garcia because she was also involved in her bankruptcy case, no action could be taken in the case regarding her, but no parties objected to proceeding with the hearing as to all other parties involved. See Tr. at 3:17-23 (Court). The FDIC began by pointing out that Lockhaven Estates, V. Garcia, and LNV Corp. had not filed responses, and asserted that there "hasn't been any genuine issue shown as to any material fact and . . . the FDIC is entitled to judgment as a matter of law." Tr. at 5:23-6:4 (Ingram). It stated that, because the Defendants -- except for M. Garcia -- have failed to file a response in opposition to its Summary Judgment Motion, and because Lockhaven Estates is a limited liability that cannot appear without counsel, it would object to any arguments V. Garcia would raise at the hearing in response to its Summary Judgment Motion. See Tr. at 6:4-14 (Ingram). The FDIC asserted that it was the Defendants' burden to produce the written document that they alleged modified Columbian Bank Bank's obligations and rights under the loan, and "that has not occurred . . . ." Tr. at 10:9-13 (Ingram). The FDIC noted that there had previously been a stipulated judgment entered in this case as part of failed settlement that has since been set aside. See Tr. at 11:4-5 (Ingram). It stated that the stipulated judgment "essentially sets forth the relief . . . sought by . . . the FDIC in this present motion for summary judgment," including a default judgment against Lambert, summary judgment against Lockhaven Estates, V. Garcia, and LNV Corp., and "abating for the time being any relief against Marie Garcia pending the order [] lifting [the] stay." Tr. at 11:6-13 (Ingram).

V. Garcia stated: "The main part of the discussion for myself and for Lockhaven is that Columbian Bank and Trust, the failed institution, breached several of its lending agreements." Tr. at 12:17-19 (V. Garcia).  That the FDIC has not produced any evidence that a demand letter was sent to the obligor or the borrower, V. Garcia contended, is evidence that there existed an agreement, whether or not in the loan documents, that Columbian Bank would not accelerate the mortgage and demand payment, and would not foreclose on the mortgage.  See Tr. at 12:22-13:7 (V. Garcia).  V. Garcia stated that he was not aware that he was required to file a response in opposition to oppose the Court granting the Summary Judgment Motion, but if he had known that one was required, he would have submitted a response.  See Tr. at 13:8-14 (V. Garcia).  V. Garcia also asserted that his counsel, who had recently ceased representing him and Lockhaven Estates in this case, did not inform him of the requirement that he and Lockhaven Estates were required to exhaust their administrative remedies before asserting their counterclaims.  See Tr. at 13:15-18 (V. Garcia).  "Had prior counsel done so," he asserted, he would have filed the administrative claims as required.  Tr. at 13:18-19 (V. Garcia).  V. Garcia stated that there are material issues that the Court should hear in this case before entering judgment, "things that the bank was doing that we think were malfeasance and bad faith on their part," such as Columbian Bank requiring him and Lockhaven Estates to draw on another loan with Columbian Bank to make interest payments on this loan.  See Tr. at 14:9-16 (V. Garcia).  V. Garcia asserted: "[P]laintiff's counsel says that the FDIC must be able to rely on the books and records of a finance institution; however, the FDIC closed this bank specifically because it could not rely on their books and records. And [FDIC] can't argue both sides of that."  Tr. at 14:17-21 (V. Garcia). V. Garcia stated that he also believes that the loan on which the FDIC is attempting to foreclose

is cross-collateralized with another loan and that the holder of that loan is not named as a Defendant in this case.  See Tr. at 14:23-15:1 (V. Garcia).

The Court asked V. Garcia whether he is still married to M. Garcia.  See Tr. at 15:5-6 Court).  V. Garcia responded that they are no longer married and that their marriage settlement agreement likely also has an effect on any judgment entered regarding the loan.  See Tr. at 15:7-17 (V. Garcia).  The Court asked M. Garcia, although the case was stayed as to her, whether there was anything that she wished to say on the motion beyond her assertion that she should not be liable for any deficiency judgment arising out of the foreclosure.  See Tr. at 17:6-14 (Court, Salmon).  M. Garcia responded that the Court is correct and that, for the reasons stated in her response, she should not be found liable for any deficiency.  See Tr. at 18:2-6 (Court).  She stated that, in light of her bankruptcy proceedings, even if the Court grants the FDIC's Summary Judgment Motion, she believes that a lift of the stay as to her in this case will require an *in rem* proceeding against her and that she will not be liable for any personal deficiency judgment.  See Tr. at 18:6-20 (Salmon, Court).  M. Garcia stated that, if the stay is lifted, she opposes the FDIC's Summary Judgment Motion only to the extent that the Court would grant a deficiency judgment against as to her.  See Tr. at 18:21-19:2 (Court, Salmon).  The Court asked whether the Court would be able to grant the FDIC's Summary Judgment Motion to the extent it seeks a deficiency judgment as to her, and, if so, whether the Court could do so before or after the stay is lifted.  See Tr. at 19:3-5 (Court).  M. Garcia responded that she believes that "any order lifting the stay will have some language in it that there can't be any personal judgment against [her and] there will only be an *in rem* judgment as to [her] interest in the property, if any."  Tr. at 19:6-10 (Salmon).

LNV Corp. stated that it "has assigned its . . . junior mortgage on the property and no longer has an interest in the mortgage . . . ." Tr. at 20:7-9 (Walker). LNV Corp. noted that it would file its position with the Court. See Tr. at 20:9-10 (Walker). It stated that it therefore did not take a position on the Summary Judgment Motion. See Tr. at 20:19-22 (Walker).

The Court asked the FDIC whether it agreed with M. Garcia's representations on how the Court could proceed as to any interest that M. Garcia may have in the property once the bankruptcy stay is lifted. See Tr. at 21:4-9 (Court). The FDIC stated that it agreed with M. Garcia's representations and that it had prepared a proposed order lifting the stay, which it had provided to M. Garcia's counsel in her bankruptcy case. See Tr. at 21:10-20 (Ingram). The FDIC, in response to the issues that V. Garcia raised during his argument, stated that, even though the loan documents do not require notice to the debtor or guarantor before foreclosure, the FDIC nevertheless attempted to provide notice, as evidenced by the notice letters it attached to its Summary Judgment Motions. See Tr. at 23:6-19 (Ingram). It asserted:

> [A]gain[,] Congress has determined that the FDIC must be able to rely on the books of the institution, otherwise, [the FDIC] would have quite a mess, and none of the failed institutions' assets would be able to be administered and collected, which would cause a far greater . . . damage to the national economy. So it's been determined that the bank's documents are what control. [Evidence of] [t]he side agreements cannot be asserted.

Tr. at 23:5-24:6 (Ingram).

The Court then advised V. Garcia that, although he did not file an opposition in response, his appearance at the hearing on the Summary Judgment Motion would suffice to state his objection for the record. See Tr. at 24:15-18 (Court). The Court also extended V. Garcia the opportunity to file *pro se* or with counsel a response, after the hearing, in opposition to the motion in writing. Because Lockhaven Estates is a limited liability company, however, the

Court advised V. Garcia that it can defend against the FDIC's lawsuit only by and through counsel:

> [Y]ou do have the opportunity to respond in writing and set forth facts that dispute the material facts that the FDIC has set forth in its motion. [The FDIC] is correct that under our local rules, if you don't respond to a motion in writing, you're deemed to have consented to the motion, and, therefore, the Court can grant the motion and consider it unopposed.
>
> . . . .
>
> [Y]ou're in a [] precarious situation right at the moment, because under the local rules you're deemed to have consented to the motion and you're deemed to have admitted the facts that [the FDIC] set forth.
>
> . . . .
>
> So I encourage you, if you have anything to say, make sure you get an attorney for Lockhaven Estates [and file a response in opposition] promptly . . . . An attorney will know how to . . . do an appropriate response if one is to be made.

Tr. at 24:18-26:10 (Court).

On September 5, 2012, the FDIC filed the Notice of Entry of Order Lifting Bankruptcy Stay (Doc. 62)("Order Lifting Stay"), providing notice of an entry of a bankruptcy court Order lifting the bankruptcy stay as to M. Garcia. See Order Lifting Stay at 1. The FDIC states that it "is entitled to proceed with this matter in order to obtain in rem relief regarding Maria P. Garcia's interest, if any, in the property made the subject of this foreclosure action, along with all relief requested against the other Defendants herein." Order Lifting Stay at 1. See In re Garcia, Case No. 12-12458-j7, Stipulated Order for Relief from Stay for FDIC/Receiver (Bankr. D.N.M. Aug. 31, 2012), filed Sept. 5, 2012 (Doc. 62-1).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

-30-

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating

conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l

Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R.

Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir.

2006)).  The United States Court of Appeals for the Tenth Circuit has noted that rule 56

> requires the nonmoving party to go beyond the pleadings and by [its] own
> affidavits, or by the depositions, answers to interrogatories, and admissions on
> file, designate specific facts showing that there is a genuine issue for trial.  Thus,
> when a movant claims that there is no genuine issue for trial because a material
> fact is undisputed, the nonmovant must do more than refer to allegations of
> counsel contained in a brief to withstand summary judgment. Rather, sufficient
> evidence (pertinent to the material issue) must be identified by reference to an
> affidavit, a deposition transcript or a specific exhibit incorporated therein.

Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992)(internal

quotations, citations, and alterations omitted)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324

(1986)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of

facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope

that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1

(quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will

not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the

factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc.,

477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448

(1871)); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249 (citations omitted).  "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248.  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  <u>See Hunt v. Cromartie</u>, 526 U.S. at 550-55; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

## <u>REVELANT LAW REGARDING NEGOTIABLE INSTRUMENTS</u>

A promissory note executed in exchange for a loan, secured by a mortgage on real property, is a negotiable instrument.  See Huntington Nat. Bank v. Sproul, 116 N.M. 254, 258 n.2, 861 P.2d 935, 939 (1993)(holding that a commercial loan note executed by the plaintiff bank and the defendant was a negotiable instrument governed by the Uniform Commercial Code as enacted in Article 55, Chapter 3 of the New Mexico Statutes Annotated 1978); Bank of Am. v. Quintana, No. 30,354, 2012 WL 1252723, at *2 (N.M. Ct. App. Mar. 12, 2012)("There is no dispute that the note signed by the [defendants] is a negotiable instrument.")(citing N.M.S.A. § 1978, § 55-3-104), cert. granted, 33,611, 2012 WL 5873504 (N.M. June 5, 2012).[4]  The United States Court of Appeals for the Fifth Circuit has noted that "[s]uits to enforce negotiable instruments are among the most suitable classes of cases for summary judgment."  Llyod v. Lawrence, 472 F.2d 313, 316 (5th Cir. 1973).  "[A] cause of action against the maker of a promissory note is established if the plaintiff proves that: (1) plaintiff is the holder of the note on

_____

[4]"As a preliminary matter, . . . suits brought by the FDIC are governed by federal law." FDIC v. Oldenburg, 34 F.3d 1529, 1538 (10th Cir. 1994)(citing 12 U.S.C. § 1819; FDIC v. Union Pac. Ins. Co., 20 F.3d 1070, 1076 (10th Cir. 1994)).  The Tenth Circuit has recognized that, in the absence of a controlling federal statute, there is presumption that state law provides the substantive law:

> In the absence of a controlling federal statute, it is a matter of judicial policy as to whether a court should apply state substantive law or fashion a federal common law rule. State law is presumed adequate unless it conflicts with federal statutory provisions or "there is a significant conflict between some federal policy or interest and the use of state law."

FDIC v. Oldenburg, 34 F.3d at 1538 (internal citations omitted)(quoting O'Melveny & Myers v. FDIC, 512 U.S. 79, 87 (1994)).  No party asserts whether federal law or state law should provide the substantive law applied to enforcement of the promissory note.  The FDIC, however, cites to New Mexico substantive law throughout its Summary Judgment Motion, see e.g., Summary Judgment Motion at 8-9 (citing to N.M.S.A. 1978, § 55-3-308 as providing a prima facie case for enforcement of the promissory note), and the substantive law cited, the New Mexico Statutes Annotated 1978, Chapter 55, is New Mexico's adoption of the Uniform Commercial Code.  Because the Court could not find any federal law conflicting with N.M.S.A. 1978, § 55-3-308, which is presumed adequate, and could not find any federal common-law rule regarding enforcement of promissory notes exchanged for mortgages, the Court concludes that New Mexico state law provides the basis for whether the Note is enforceable.

which [the plaintiff] sues; (2) defendant signed the note; (3) the note became due and payable; and (4) defendant has not paid the amount due and owing." Fed. Sav. and Loan Ins. Corp. v. Wilson, 706 F. Supp. 306, 309 (N.D. Tex. 1989). See Enforcement of Instruments, N.M.S.A. 1978, Chapter 55, Article 3, Part 3.

## RELEVANT LAW REGARDING FIRREA

Congress enacted FIRREA in 1989 to remedy the problems that it saw in the then-existing regulatory scheme in the savings and loan industry. See Meliezer v. Resolution Trust Co., 952 F.2d 879, 881 (5th Cir. 1992). See, generally, H.R. Rep. 101-54(I), 101st Cong., 1st Sess. 286, reprinted in 1989 U.S. Code Cong. & Admin. News 86 (detailing the history and purpose behind FIRREA). FIRREA "abolish[ed] the Federal Savings and Loan Insurance Corporation and transfer[ed] the functions and activities of the Federal Savings and Loan Insurance Corporation and the Federal Home Loan Bank Board to the Federal Deposit Insurance Corporation . . . ." H.R. Rep. 101-54 at 291, 1989 U.S.C.C.A.N. at 87.[5] One of Congress'

---

[5]To more effectively dispose of the assets of failed federally insured savings and loan institutions, FIRREA created a new entity: The Resolution Trust Corporation. See H.R. Rep. 101-54 at 309, 1989 U.S.C.C.A.N. at 104 ("The legislation establishes a Resolution Trust Corporation (RTC) to manage and dispose of the assets acquired from failed thrifts."). Much of the case law cited in this opinion construing FIRREA was decided shortly after its enactment, and involved the RTC rather than the FDIC. In 1995, six years after its creation, the RTC closed, and the role of a United States entity acting as conservator or receiver for failed banks was transferred to the FDIC. See The Federal Deposit Insurance Corporation, Managing the Crisis: The FDIC and RTC Experience, Chronological Overview: Chapter Eighteen -- 1995, http://www.fdic.gov/bank/historical/managing (last updated Jan. 5, 2005)("On December 31, [1995,] the Resolution Trust Corporation (RTC), created in 1989 to manage and sell failed savings associations, officially closed. All remaining assets and liabilities were transferred to the FDIC . . . ."). Although much of the FIRREA law cited refers to the RTC, because the FDIC has stepped into the RTC's role for purposes of disposing of failed financial institutions' assets, the legal analysis with respect to the RTC thus applies to the FDIC. See Rinestone v. Enter. Bank & Trust, CV 11-02381-PHX-NVW, 2012 WL 1681986, at *6 n.2 (D. Ariz. May 14, 2012)("The RTC, while it existed, was governed by the same statutes as the FDIC. Any analysis with respect to the RTC is therefore applicable to the FDIC."); Veluchamy v. FDIC, 10 C 648, 2010 WL 4781911, at *4 n.2 (N.D. Ill. Nov. 10, 2010)(noting that, although the case law cited discusses the RTC "rather than the FDIC, the case law is applicable here. . . . [T]he RTC ceased to exist on

purposes in enacting FIRREA was to provide effective legislation through which the government could "manage and dispose of the assets acquired from failed [depository institutions]."  H.R. Rep. 101-54 at 308, 1989 U.S.C.C.A.N. at 104. See Carney v. Resolution Trust Corp., 19 F.3d 950, 955 (5th Cir. 1994)("Congress enacted FIRREA to create an efficient method for processing claims against failed banks.").

### 1.  12 U.S.C. § 1821(d)(13)(D)'s Requirement to Exhaust Administrative Remedies.

To ensure that the FDIC could deal expeditiously with the failed depository institutions, Congress enacted 12 U.S.C. § 1821, creating a new claims determination procedure by which persons asserting claims against a failed institution may be required to present their claims first to the FDIC as receiver of the failed institutions before pursuing a judicial remedy.  See Meliezer v. Resolution Trust Co., 952 F.2d at 881 (5th Cir. 1992)("To assure that the . . . [FDIC] could deal expeditiously with failed depository institutions, Congress created a new . . . procedure by which the creditors of a failed institution may be required to first present their claims to the Receiver for [] consideration before pursuing a judicial remedy.").  12 U.S.C. § 1821(d)(13)(D) provides:

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
>> **(i)** any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>>
>> **(ii)** any claim relating to any act or omission of such institution or the Corporation as receiver.

December 31, 1995 and the FDIC succeeded to its rights as a receiver the following day")(internal citations omitted).

12 U.S.C.A. § 1821(d)(13)(D). The Tenth Circuit has held that completion of the FDIC's administrative review process is a prerequisite to federal subject-matter jurisdiction over such claims: "When a failed financial institution is placed into FDIC receivership, claims against the institution must be submitted to the FDIC for administration determination. The claims process is a mandatory prerequisite to judicial review. Federal Courts may exercise jurisdiction only after a claimant has completed the administrative claims process." In re George Love Farming, LC, 420 F. App'x 788, 791 (10th Cir. 2011)(unpublished)[6](citing 12 U.S.C. §§ 1821(d)(13)(D), (d)(6)(A)(i), (d)(7)(A), and (d)(8)(C)). See also Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d 785, 792 (9th Cir. 1993)("[C]ourts have held § 1821(d)(13)(D) divests courts of jurisdiction over both counterclaims and affirmative defenses asserted in response to a claim brought by RTC until the appropriate administrative remedies are exhausted."); FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991)("FIRREA's claims procedure in section 1821(d) is exclusive. Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."); Glenborough N.M. Assocs. V. Resolution Trust Corp., 802 F. Supp. 387, 391 (D.N.M. 1992)(Parker, J.)("It is now well established that exhaustion of administrative remedies is required before a claim can be brought in this court against the RTC.").

### 2.   12 U.S.C. § 1821(j)'s Restriction of a Court's Discretion to Exercise its Equitable Powers.

---

[6]In re George Love Farming, LC is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that In re George Love Farming, LC has persuasive value with respect to a material issue, and will assist the Court in its disposition of this memorandum opinion and order.

Section 212(j) of FIRREA, codified as amended at 12 U.S.C. § 1821(j), provides: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."  This section has been construed uniformly to restrain courts' powers to grant equitable relief when the FDIC is acting pursuant to its statutorily prescribed powers.  See, e.g., Lloyd v. FDIC, 22 F.3d 335, 336 (1st Cir. 1994)(noting that, pursuant to 12 U.S.C. § 1981(j), "[a] district court lacks jurisdiction to enjoin the FDIC when the FDIC is acting pursuant to its statutory powers as receiver"); Ward v. Resolution Trust Corp., 996 F.2d 99, 102 (5th Cir. 1993)("[B]y virtue of § 1821(j) the courts lack the ability to enjoin actions that are within the statutory powers of the RTC as conservator or receiver.")(internal quotations omitted); Gross v. Bell Sav. Bank PaSA, 974 F.2d 403, 407-08 (3d Cir. 1992)(stating that that, pursuant to § 1821(j), "courts are generally not permitted to enjoin any actions that the RTC takes in its role as receiver or conservator").  The United States Court of Appeals for the District of Columbia Circuit has noted:

> Although this limitation on courts' power to grant equitable relief may appear drastic, it fully accords with the intent of Congress at the time it enacted FIRREA in the midst of the savings and loan insolvency crisis to enable the FDIC . . . to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country.

Freeman v. FDIC, 56 F.3d 1394, 1398 (D.C. Cir. 1995)(citing H.R. Rep. 101-54 at 307, 1989 U.S.C.C.A.N. at 103).  Because "[s]ection 1821(j) . . . effect[s] a sweeping ouster of courts' power to grant equitable remedies to parties . . . [a] district court [cannot] grant[] . . . pleas for nonmonetary remedies, including injunctive relief, declaratory relief, and rescission of [a] promissory note."  Freeman v. FDIC, 56 F.3d at 1399.  Courts cannot restrain the FDIC's power

acting as conservator or receiver of a failed bank "regardless of the likelihood of success on the merits of [the] underlying claims." Freeman v. FDIC, 56 F.3d at 1399.

    **3.**    **12 U.S.C. § 1823(e)'s Requirements for Agreements Against the Interests of the FDIC.**

FIRREA section 217, codified as amended at 12 U.S.C. § 1823, provides:

(e) Agreements against interests of Corporation

    (1) In general

    No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--

        **(A)** is in writing,

        **(B)** was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

        **(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

        **(D)** has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e)(1). The Tenth Circuit noted that 12 U.S.C. § 1823(e) is the codification of the common-law doctrine the Supreme Court of the United States articulated in D'Oench Duhme & Co. v. FDIC, 315 U.S. 447 (1942), which "declared that the maker of a demand note is estopped from asserting as a defense against the FDIC the parties' 'secret agreement' not to enforce the note." FDIC v. Oldenburg, 34 F.3d 1529, 1550 (10th Cir. 1994)(quoting D'Oench Duhme & Co. v. FDIC, 315 U.S. at 460). The Tenth Circuit has recognized:

    The "purpose underlying the D'Oench doctrine is to permit regulators to accurately appraise the assets of savings institutions by allowing the regulators to rely on the assets' face value," and the doctrine's focus is on "the effect the

debtor's acts have on the regulatory agency's ability to evaluate quickly and accurately a savings institution's assets."

Harrison v. Wahatoyas, LLC, 253 F.3d 552, 558 (10th Cir. 2001)(internal alterations omitted)(quoting FDIC v. Noel, 177 F.3d 911, 914 (10th Cir. 1999)).  "This doctrine places limits on the use to which 'side deals' can be put to defeat obligations created in documents on file in a bank."  Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d at 789. The definition of an agreement under 12 U.S.C. § 1823(e) has been "broadly" interpreted.  FDIC v. Oldenburg, 34 F.3d at 1551.  See Langley v. FDIC, 484 U.S. 86, 91-93 (1987)(construing agreement to cover not only a bank's promise to perform, but also "a condition upon performance," including a "misrepresentation concerning an existing fact").  "The burden of establishing that an applicable agreement satisfies the requirements of section 1823(e) lies with [the borrower]."  FDIC v. Oldenburg, 34 F.3d at 1551.

## ANALYSIS

LNV Corp. admitted at the hearing, in accord with its Answer and the Mortgage, that its mortgage on the Properties made the subject of this foreclosure action is junior to the FDIC's lien on the Properties.  See Tr. at 20:7-10 (Walker).  The Court, therefore, finds that the FDIC/Receive has a first, prior, and paramount lien as against all the Defendants herein and to the Properties made the subject of this foreclosure action. The Court also finds that, because the FDIC has "shown by affidavit or otherwise" that Defendant Lambert has failed to plead or otherwise defend against the FDIC's suit, and because the Clerk of the Court has already entered its Entry of Default as to Lambert, it is entitled to default judgment against Lambert.  Fed. R. Civ. P. 55(a).  The Court, therefore, will grant default judgment in the FDIC's favor against Lambert, pursuant to rule 55 of the Federal Rules of Civil Procedure.

The undisputed facts establish that the FDIC is entitled to summary judgment as a matter of law against Lockhaven Estates, V. Garcia, and M. Garcia.  The FDIC has established that it is entitled to enforce the Note and to foreclose on the Properties that the Mortgage secures.  The affirmative defenses that Lockhaven Estates, V. Garcia, and M. Garcia raise in opposition to the FDIC's foreclosure action fail, because: (i) the Loan Documents' plain language precludes many of the defenses, (ii) the Court lacks jurisdiction to hear any defenses asking the Court to offset or decrease the judgment against Lockhaven Estates and V. Garcia, because of alleged damages that Columbian Bank caused them, as the Defendants have not exhausted their administrative remedies; (iii) certain defenses ask the Court to grant equitable relief, which the Court is precluded from granting in actions where the FDIC is acting pursuant to its statutory power as a receiver; or (iv) the defenses rest upon alleged agreements varying the terms of the loan, separate from the Loan Documents that the FDIC possesses, and Lockhaven Estates and V. Garcia fail to show that there is a genuine issue of material fact that any such alleged agreement exists.  The Court will thus grant summary judgment *in personam* in the FDIC's favor against Lockhaven Estates, V. Garcia, and LNV Corp., and will grant summary judgment *in rem* in the FDIC's favor against M. Garcia.[7]

## I.     THE FDIC HAS ESTABLISHED ALL ELEMENTS NECESSARY TO SHOW THAT IT IS ENTITLED TO ENFORCE THE NOTE DATED APRIL 27, 2006, ON WHICH LOCKHAVEN ESTATES DEFAULTED, AND THE UNCONDITIONAL GUARANTY EXECUTED BY V. GARCIA AND M. GARCIA GUARANTEEING THE NOTE.

"[A] cause of action against the maker of a promissory note is established if the plaintiff proves that: (1) plaintiff is the holder of the note on which [the plaintiff] sues; (2) defendant signed the note; (3) the note became due and payable; and (4) defendant has not paid the amount

---

[7] Pursuant to the Stipulated Order for Relief from Stay for FDIC/Receiver at *3-4, in In re Garcia, Case No. 12-12458-j7, the parties have stipulated that they are "only authorize[d] *in rem* relief as to [M. Garcia]'s interest in the Property, which is abandoned as property of [her] estate."

due and owing."   <u>Fed. Sav. and Loan Ins. Corp. v. Wilson</u>, 706 F. Supp. at 309.   <u>See</u> Enforcement of Instruments, N.M.S.A. 1978, Chapter 55, Article 3, Part 3.   The Office of the State Bank Commissioner for the State of Kansas, on August 22, 2008, appointed the FDIC as receiver of Columbian Bank.   <u>See</u> Declaration of Insolvency and Tender of Receivership at 1. On the same day, the FDIC accepted its appointment as receiver.   <u>See</u> Acceptance of Appointment as Receiver at 1.   First, the FDIC has thus established that it is owner and holder of the Note, the Mortgage, the Loan Agreement, and the Unconditional Guaranty, and having produced these documents to the Court, has therefore proved the first element required to show that it is entitled to judgment against Lockhaven Estates for the amount on the Note, and V. Garcia and M. Garcia for the same amount as guaranteed in the Unconditional Guaranty.   <u>See</u> Note at 1; Mortgage at 1; Loan Agreement at 1; Unconditional Guaranty at 1.   In regards to the second element, Lockhaven Estates, and V. Garcia as its managing member, signed the Note. <u>See</u> Note at 7.   The loan matured, and the Note became due and payable on April 27, 2008.   <u>See</u> Note at 1.   The Unconditional Guaranty provides that the FDIC as owner and holder of the Note can "resort to Guarantor for full payment of all or any portion of the indebtedness" owing on the Note without first resorting to any others liable for the debt.   Unconditional Guaranty ¶ 2(e), at 1. Lockhaven Estates, V. Garcia, and M. Garcia have failed to pay the amount due and owing.   <u>See</u> Ellis Affidavit ¶ 12, at 7; Letter from the FDIC to Lockhaven Estates at 1;  Letter from the FDIC to V. Garcia at 1; Letter from the FDIC to M. Garcia at 1.   The FDIC, therefore, has made out a prima-facie case showing that it is entitled to judgment against Lockhaven Estates, V. Garcia, and M. Garcia for the principal amount of the Note, plus costs.

II.     **THE LOAN DOCUMENTS PRECLUDE LOCKHAVEN ESTATES' AND V. GARCIA'S ASSERTED AFFIRMATIVE DEFENSES THAT THE LOAN WAS NOT TIMELY AND FULLY FUNDED, AND LOCKHAVEN ESTATES', V. GARCIA'S, AND M. GARCIA'S DEFENSE THAT COLUMBIAN BANK DID**

**NOT COMPLY WITH THE TERMS AND CONDITIONS OF THE LOAN BY <u>NOT GIVING NOTICE OF DEFAULT</u>.**

Lockhaven Estates and V. Garcia argue that Columbian Bank breached the Loan Agreement by failing to timely and fully fund the loan, and that Columbian Bank failed to comply with Loan Documents' terms and conditions for providing notice of default.   See Lockhaven Estates/V. Garcia Answer ¶¶ 6, 9 at 2, 4.   M. Garcia argues that she should be excused from her obligation as guarantor, because she was never served with notice of default, and because she "was induced to sign the loan documents[,] including the loan agreement and guaranty[,] without understanding what obligations where being guaranteed . . . and executed the guarantee based on misrepresentations that as spouse of Vincent J. Garcia she was required to sign the documents . . . ."  M. Garcia's Response ¶¶ 2, 3, at 1-2.  The Loan Documents' plain language, however, precludes these defenses.

In regards to Lockhaven Estate's and V. Garcia's contention that Columbian Bank breached the Loan Agreement, or that the amount owing on the note is incorrect as Columbian Bank failed to timely and fully fund the loan, the Note, the Mortgage, and the Unconditional Guaranty -- all executed on April 27, 2006 -- state that the Borrower or Guarantor promised to pay and were executed in favor of Columbian Bank for "value received," "for consideration paid," and in exchange for "valuable consideration," respectively.  Note at 1; Mortgage at 1; Unconditional Guaranty at 1.  Absent from the record is any evidence disputing that the loan was funded timely and fully on April 27, 2006.  There is no agreement to modify the Note, Mortgage, or Unconditional Guaranty on the face of the Loan Agreement, or anywhere else within the Loan Documents.  Because the Lockhaven Estates' and V. Garcia's contention that the loan was not timely and fully funded is without evidentiary support in the record, the undisputed evidence therefore establishes as fact that the loan was timely and fully funded.

The plain language of the Loan Documents also precludes Lockhaven Estates', V. Garcia's, and M. Garcia's contention that they cannot be held liable for the amount owing on the loan because they were not provided with notice of default. The Loan Agreement provides that, "[o]n the occurrence of an Event of Default and after expiration of any applicable grace period, Lender may . . . [d]eclare the Note and all other obligations owed Lender by Borrower immediately due and payable without notice . . . ." Loan Agreement ¶ 7.2, at 11 (emphasis added). The Note provides: "Upon a default hereunder, Lender may, at its option, declare the entire unpaid principal balance of this Note, all accrued unpaid interest thereon and any other obligations arising in connection with the Loan immediately due and payable, without notice or demand, and Borrower will pay that amount. . . ." Note at 2 (emphasis added). Similarly, the Unconditional Guaranty, in which V. Garcia and M. Garcia "absolutely, irrevocably, and unconditionally, jointly and severally, guarantee and promise to pay . . . [Columbian Bank] any and all indebtedness owed by Lockhaven Estates," provides for Columbian Bank to hold V. Garcia and M. Garcia primarily liable for the amount of indebtedness, "[u]pon such terms and at such times as it deems best and without notice to Guarantor . . . ." Unconditional Guaranty at 1 (emphasis added). None of the Defendants have provided competent evidence of a supplemental agreement or amendment that modifies this language in the Loan Documents. Because the record is without evidence that Columbian Bank was required to provide notice of default to Lockhaven Estates, V. Garcia, or M. Garcia, the FDIC has established that neither it nor Columbian Bank were required to provide written notice to Lockhaven Estates before taking action against it on its obligation in the Note, or before taking action against V. Garcia or M. Garcia on their guaranty of Lockhaven Estates' Note.

## III.  THE COURT LACKS JURISDICTION TO HEAR LOCKHAVEN ESTATES' AND V. GARCIA'S ARGUMENT THAT THEY HAVE BEEN DAMAGED BY

**COLUMBIAN BANK'S ALLEGED BREACH OF THE LOAN AGREEMENT, BECAUSE THEY HAVE NOT EXHAUSTED THEIR JUDICIAL REMEDIES.**

Lockhaven Estates and V. Garcia raise as an affirmative defense that Columbian Bank "engaged in multiple actions and misconduct in breach and willful derogation of its obligations to Lockhaven and Garcia, all of which resulted in significant damages to such Defendants," and that "Columbian Bank and the FDIC failed to mitigate their losses."  Lockhaven Estates/V. Garcia Answer ¶¶ 7, 8, at 2-3.  The FDIC contends, however, that, because these defenses are essentially requesting payments from, or diminishing the value of the FDIC's assets, the Court lacks jurisdiction to entertain these arguments as under 12 U.S.C. § 1281, Lockhaven Estates and V. Garcia have not properly sought administrative review of their claims.  See Memorandum at 16.  The Tenth Circuit has held that, "[w]hen a failed financial institution is placed into FDIC receivership, claims against the institution must be submitted to the FDIC for administration determination.  The claims process is a mandatory prerequisite to judicial review.  Federal Courts may exercise jurisdiction only after a claimant has completed the administrative claims process."  In re George Love Farming, LC, 420 F. App'x at 791.  The administrative claims process for claims against a failed institution for which the FDIC has been appointed receiver is found in 12 U.S.C. § 1821(d)(13)(D), which provides:

(D) Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over--

**(i)** any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

**(ii)** any claim relating to any act or omission of such institution or the Corporation as receiver.

-45-

12 U.S.C.A. § 1821(d)(13)(D).  As the United States Court of Appeals for the Ninth Circuit has stated: "[Section] 1821(d)(13)(D) divests courts of jurisdiction over both counterclaims and affirmative defenses asserted in response to a claim brought by the RTC until the appropriate administrative remedies are exhausted." Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d at 792.

V. Garcia admits that neither he nor Lockhaven Estates filed a claim with the FDIC to review their allegations that they were damaged by Columbian Bank's actions regarding the loan. See Tr. at 13:18-19 (V. Garcia).  Accord Ellis Affidavit ¶ 13, at 7.  While V. Garcia stated at the hearing that he was unaware that he had to first exhaust his administrative remedies to seek review of them from the Court, and that had he known, he would have done so, see Tr. at 13:15-19 (V. Garcia), in the intervening five months since the hearing on this matter, as reflected in the Court's record and to the Court's knowledge, no Defendant in this lawsuit has filed a claim with the FDIC.  To the extent that Lockhaven Estates and V. Garcia contend that they are entitled damages that "should be offset and credited against any amounts for which Lockhaven and/or Garcia are [] adjudicated liable in this action," Lockhaven Estates/V. Garcia Answer ¶ 7, at 2, or that their liabilities should otherwise be lessened because "Columbian and the FDIC failed to mitigate their losses by avoiding and prolonging attempts by Borrower to settle the loan," Lockhaven Estates/V. Garcia Answer ¶ 8, at 3, FIRREA precludes such an offset or credit.  While an offset for damages may not be a "payment from" the FDIC's assets, the Court's determination that Lockhaven Estates and V. Garcia are entitled to damages, and that the damages should offset the amount that they owe on the loan, reduces the FDIC's assets.  Lockhaven Estates' and V. Garcia's defense is thus "seeking a determination of rights with respect to[] the assets of a[] depository institution for which the Corporation has been appointed

receiver."   12 U.S.C. § 1821(d)(13)(D)(i).   Section 1821(d)(13)(D)(i) divests the Court of jurisdiction over such a defense, and the Court will therefore dismiss without prejudice Lockhaven Estates' and V. Garcia's defenses to the extent that they seek the Court to determine the rights with respect to the amount owing on the loan because of any alleged damage Columbian Bank has caused them.

**IV.   12 U.S.C. § 1821(j) PRCECLUDES LOCKHAVEN ESTATES', V. GARCIA'S, AND M. GARCIA'S AFFIRMATIVE DEFENSE THAT THE FDIC IS EQUITABLY ESTOPPED FROM PURSUING THIS ACTION.**

Lockhaven Estates and V. Garcia argue that the Court should exercise its equitable power to deny the FDIC "the equitable remedy of foreclosure," because the FDIC comes to the Court with "unclean hands" and that "[t]he Complaint is barred by operation of the doctrine of laches." Lockhaven Estates/V. Garcia Answer ¶¶ 10, 11, 12, at 4.   The FDIC contends that these "attempts to assert any equitable defenses or equitable right of relief against FDIC are barred by 12 U.S.C. § 1821(j) of FIRREA."   Memorandum at 18.   Section 1821(j) provides: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."   As the Fifth Circuit has noted, "by virtue of § 1821(j) the courts lack the ability to enjoin actions that are within the statutory powers of the [FDIC] as conservator or receiver."   Ward v. Resolution Trust Corp., 996 F.2d at 102 (internal quotations omitted).   Thus, "[s]ection 1821(j) . . . effect[s] a sweeping ouster of courts' power to grant equitable remedies to parties . . . .   [A] district court [cannot] grant[] . . . pleas for nonmonetary remedies, including injunctive relief, declaratory relief, and rescission of [a] promissory note."   Freeman v. FDIC, 56 F.3d at 1399.   Accord Glenborough N.M. Assocs. v. Resolution Trust Corp., 802 F. Supp. at 6 (citing to 12 U.S.C. § 1821(j) for the proposition that

"[i]njunctive relief is specifically barred by FIRREA"); Hoxeng v. Topeka Broadcomm, Inc., 911 F. Supp. at 1323 ("[E]quitable relief [the plaintiff seeks] . . . ha[ve] been prohibited by Congress pursuant to 12 U.S.C. § 1821(j) . . .")(quoting Pyramid Constr. Co. v. Wind River Petroleum, Inc., 866 F. Supp. 513, 517 (D.Utah 1996)).   In light of the clearly established law that 12 U.S.C. § 1821(j) of FIRREA prevents the Court from providing a defendant equitable relief when the FDIC is acting pursuant to its powers as receiver for a failed depository institution, the Court is precluded from entertaining any of the equitable defenses that the Defendants raise "regardless of the likelihood of success on the merits of [the] underlying claims." Freeman v. FDIC, 56 F.3d at 1399.

M. Garcia's "conten[tion] that she should not be held liable as a Guarantor for any deficiency judgment," because "she executed the Guarantee [sic] based upon representations made at closing," Garcia's Response at 2, also fails, as it asks the Court to grant her the relief of equitable rescission.   As a preliminary matter, the Court notes that rescission is not solely an equitable remedy; rescission may also be a legal remedy.   Legal rescission is defined as "[r]escission that is effected by the legal agreement of the parties."   Black's Law Dictionary 1421 (9th ed. 2009). As Professor Douglas Laycock has explained:

> The modern tendency is to treat rescission as equitable, but rescission was often available at law. If plaintiff had paid money, or had delivered goods, [plaintiff] could rescind by tendering whatever [plaintiff] had received from defendant and suing at law to recover [the] money or reply [the] goods. But if plaintiff had delivered a promissory note or securities, or conveyed real estate, rescission required the court to cancel the instrument or reconvey. This relief was available only in equity."

Douglas Laycock, Modern American Remedies 627-28 (3d. ed. 2002)(emphasis added).   M. Garcia's request that the Court cancel the Unconditional Guaranty as to her because of her misunderstanding or a misrepresentation at closing is, as Professor Laycock recognizes, a request

for the Court to grant equitable rescission.  That M. Garcia requests equitable rescission is also revealed from her answer to the FDIC's Complaint, in which she "asserts equitable defenses as to Plaintiff's claims against her personally as she did not understand the documents or the loan transaction and only executed the same based on misrepresentation that as spouse of [V.] Garcia that her signature was required . . . ."  M. Garcia Answer ¶ 4, at 2.

Aside from § 1821(j)'s broad restriction on courts' abilities to grant equitable relief generally, courts have consistently applied § 1821(j) to bar claims for rescission specifically.  See, e.g., Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996); Freeman v. FDIC, 56 F.3d at 1399; Ward v. Resolution Trust Cor., 996 F.2d at 103-04; United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1329 (6th Cir. 1993).  In Tri-State Hotels, Inc. v. FDIC, the United States Court of Appeals for the Eighth Circuit held that § 1821(j) barred a plaintiff's claim against the FDIC for rescission of a loan agreement where it was established that the insolvent bank breached the agreement before going into receivership.  See 79 F.3d at 710, 715.  Here, as in Tri-State Hotels, Inc. v. FDIC, M. Garcia is contending that Columbian Bank breached the Loan Agreement and the Unconditional Guaranty by not providing her with notice of default.  Even if the Court had not found above that it was not required to do so, and even though the FDIC has attempted to do so, see Letter from the FDIC to M. Garcia at 1, as the Eighth Circuit concluded in Tri-State Hotels, Inc. v. FDIC, 12 U.S.C. § 1821(j) precludes the Court from granting rescission even in such circumstances.  Her main argument, however, is not that she is entitled to legal relief, but that the Court should not enter a deficiency judgment because "she was induced to sign the . . . loan agreement and guaranty without understanding what obligations were being guaranteed . . . and [that she] executed the guarantee based on misrepresentations that as spouse of Vincent J. Garcia she was required to sign the documents . . . ."  M. Garcia's Response ¶ 2, at

1.  Whether the Court might be inclined to grant such equitable relief in certain circumstances, under the circumstances of this case, 12 U.S.C. § 1821(j) precludes the Court from granting her such relief.  To the extent that M. Garcia, Lockhaven Estates, and V. Garcia request the Court to deny the FDIC's requested relief in its Summary Judgment Motion on equitable grounds, the Court is thus precluded from granting the requests. The Court, therefore, dismisses Lockhaven Estates', V. Garcia's, and M. Garcia's defenses to the extent they rely on requests for the Court to exercise its equitable powers.

## V. LOCKHAVEN ESTATES AND V. GARCIA CANNOT ESTABLISH ON THE RECORD BEFORE THE COURT THAT ANY ALLEGED OUTSIDE AGREEMENT CAN MEET THE REQUIREMENTS OF 12 U.S.C. § 1823(e) REQUIRED FOR ENFORCEMENT OF ANY SUCH ALLEGED AGREEMENT.

Although Lockhaven Estates and V. Garcia do not specifically allege the existence of a formal supplemental agreement or amendment to the Loan Agreement that supersedes the Loan Agreement, throughout their Lockhaven Estates/V. Garcia Answer, they argue that the Court should restrain the FDIC from enforcing the Note and foreclosing on the loan, because of collateral agreements that they made with Columbian Bank.  See Lockhaven Estates/V. Garcia Answer ¶ 7(a), at 2 ("The amount claimed due on the Note in the Complaint is incorrect. Columbian Bank agreed with Lockhaven to modify the Loan Agreement . . . ."); id. ¶ 7(b), at 3 ("Columbian Bank agreed with Lockhaven that it would not foreclose on the property, but that it would instead schedule repayment at restructured and renegotiated rates of interest until and as the subdivision's lots were sold.");  id. ¶ 7(c), at 3 ("Columbian Bank insinuated a third party . . . into the subject loan and relationship with Defendants, and without the knowledge or consent of Defendants . . . .").  The FDIC contends that Lockhaven Estates and V. Garcia cannot meet their burden under 12 U.S.C. § 1823(e) to assert such an agreement or agreements as a defense to the FDIC's foreclosure action.  See Memorandum at 19.  Section 1823(e) provides:

(e) Agreements against interests of Corporation

(1) In general

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--

**(B)** is in writing,

**(B)** was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

**(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

**(D)** has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C.A. § 1823(e)(1). "This [provision] places limits on the use to which 'side deals' can be put to defeat obligations created in documents on file in a bank." Resolution Trust Corp. v. Midwest Fed. Sav. Bank of Minot, 36 F.3d at 789.  The definition of an agreement under 12 U.S.C. § 1823(e) has been "broadly" interpreted.  FDIC v. Oldenburg, 34 F.3d at 1551.  See Langley v. FDIC, 484 U.S. at 91-93 (construing agreement to cover not only a bank's promise to perform, but also "a condition upon performance," including a "misrepresentation concerning an existing fact").  "The burden of establishing that an applicable agreement satisfies the requirements of section 1823(e) lies with [the borrower]." FDIC v. Oldenburg, 34 F.3d at 1551.

All of the alleged agreements that Lockhaven Estates and V. Garcia contend they had with Columbian Bank -- or that Columbian Bank had with other third parties -- in which Columbian Bank modified the terms of, or the amount due on the loan, or in which Columbian Bank agreed not to foreclose on the loan, would "diminish or defeat the interest of the [FDIC] in

an[] asset acquired" when the FDIC became the receiver of Columbian Bank.  12 U.S.C.A. § 1823(e)(1).  As the Tenth Circuit held in <u>FDIC v. Oldenburg</u>, § 1823(e) shifts the burden of establishing the existence of these alleged agreements to the borrower asserting the existence of such agreements.  Because Lockhaven Estates and V. Garcia have not asserted any undisputed facts additional to those that the FDIC has set forth, and because there is no evidence in the record of an agreement regarding the loan that is (i) written, (ii) was executed by Columbian Bank contemporaneously with its acquisition of the Note, (iii) was approved by Columbian Bank's board and reflected in its minutes, and (iv) has been a continuously filed official record of Columbian Bank, Lockhaven Estates and V. Garcia have failed to meet their burden to establish a dispute whether these agreements exist.  The Court, therefore, dismisses their affirmative defenses to the extent they rely on alleged agreements with Columbian Bank or Columbian Bank's agreements with other third parties modifying the terms of the Loan Agreement.

## VI.   THE COURT WILL GRANT THE FDIC'S REMAINING REQUESTS IN ITS SUMMARY JUDGMENT MOTION.

The undisputed facts thus establish that Lockhaven Estates, V. Garcia, and M. Garcia are not entitled to the affirmative defenses asserted in their answers. The FDIC has established a prima-facie case for enforcement of the Note against Lockhaven Estate, and the Unconditional Guaranty against V. Garcia and M. Garcia, to which they have no defenses.  There is also no genuine issue of material fact about the amounts owed, or the terms of repayment and the consequences of nonpayment.  Accordingly, the Court concludes that the FDIC is entitled to the remaining requests in its Summary Judgment Motion.

**IT IS ORDERED** that the FDIC/Receiver's Motion for Default Judgment and Summary Judgment, filed Mar. 26, 2012 (Doc. 32), is granted in part and denied in part.  The Court therefore:

1.      Grants summary judgment *in personam* in favor of the Plaintiff Federal Deposit Insurance Corporation, as Receiver for the Columbian Bank & Trust Company, against Defendants Lockhaven Estates, LLC and Vincent J. Garcia, in the principal amount of $1,800,000.00, plus outstanding interest due in the amount of $672,197.50 as of August 5, 2011, plus default rate adjustment of $403,312.50, and accruing thereafter at the rate of $900.00 per day, plus late charges of $123,356.25, plus title report fee of $537.81, plus attorney's fees and costs incurred in connection with this foreclosure action in the amount of $19,264.88, plus court costs of $1,508.65, plus other necessary costs;

2.      Grants summary judgment *in rem* in the FDIC's favor against Defendant Maria P. Garcia's property, in the principal amount of $1,800,000.00, plus outstanding interest due in the amount of $672,197.50 as of August 5, 2011, plus default rate adjustment of $403,312.50, and accruing thereafter at the rate of $900.00 per day, plus late charges of $123,356.25, plus title report fee of $537.81, plus attorney's fees and costs incurred in connection with this foreclosure action in the amount of $19,264.88, plus court costs of $1,508.65, plus other necessary costs;

3.      Orders that the lien of FDIC's Mortgage on the Properties be foreclosed and the Properties securing same be sold according to New Mexico law; that the proceeds from the sale be applied to the payment of the amounts due FDIC as set forth above, with FDIC having judgment for any deficiency -- except as to M. Garcia -- in the proceeds of sale compared to the amount due FDIC; and that any proceeds remaining after sale be held pending further order of the Court;

5.      That Wayne Chew or his designee is appointed Special Master to advertise and sell the Properties at public auction to the highest bidder for cash as provided by law, and that the FDIC is allowed to bid its judgment as cash;

6.      That such foreclosure sale shall be subject to a one month right of redemption;

7.      That a Writ of Assistance be issued at the request of FDIC or any purchaser at the foreclosure sale if the Defendants or those claiming by, through, or under them refuse to vacate the properties.


_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Stephen D. Ingram
Cavin & Ingram
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Lockhaven Estates, LLC
Albuquerque, New Mexico

     *Unrepresented by Counsel*

Vincent J. Garcia
Albuquerque, New Mexico

     *Pro se Defendant*

William C. Salmon
Rhodes & Salmon, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Martha P. Garcia*

Thomas D. Walker
Jacobvitz, Thuma & Walker

Albuquerque, New Mexico

*Attorneys for Defendant LVN Corporation*